CHRIS DALURY, Appellant, *v.* JOHN REZINAS, Defendant, Impleaded with COSTA BOORAS and Others, Respondents.

First Department, June 7, 1918.

Partnership — action at law based on alleged conspiracy to oust partner and deprive him of his investment in the partnership — when action at law does not lie — failure of plaintiff to assert his rights in prior judicial proceedings — pursuance of legal right does not give rise to cause of action — malice immaterial — right of landlord to maintain dispossess proceedings against partnership — failure to object to accounting of referee.

A partner cannot maintain an action at law to recover money damages against his copartner and other defendants who are alleged to have conspired to oust the plaintiff from the partnership property and to deprive him of his investment therein, where it appears that the alleged conspiracy consisted, *first*, in a dispossession proceeding brought by the lessor of the partnership property who subsequently relet the premises to alleged dummies acting for the plaintiff's partner, in which proceeding the plaintiff was made a party, and *second*, by a judicial sale of the partnership assets made by a receiver duly appointed by the court by consent of parties to alleged dummies, if the plaintiff's objections to the referee's account were withdrawn and the receiver was discharged by the court.

If there was any irregularity in the sale by the receiver the plaintiff was required to make his objections and seek redress in the receiver's judicial accounting.

The plaintiff's remedy for the alleged wrongful acts of his copartner was a suit in equity for an accounting.

*Per* PAGE, J., and CLARKE, P. J. ·

The plaintiff's partner was not compelled to advance from his own individual funds moneys due from the copartnership so as to forestall dispossession proceedings by the landlord.

The dispossession proceedings and the sale by the receiver were legal remedies legally pursued by those having a right thereto, and hence do

not give rise to an action at law although the purpose and intent were malicious.

There can be no conspiracy to do a lawful act, except where the combination assumes a public or *quasi* public aspect.

One partner cannot sue the other at law, as distinguished from a suit in equity, with respect to partnership transactions, except after a full accounting and balance struck, and such action is on contract and not *ex delicto.*

*Per* SMITH, J.

As a suit for an accounting of the partnership affairs originally brought by the plaintiff is closed and as the accounting of the receiver is closed after plaintiff's objections thereto were withdrawn, the plaintiff is left without legal remedy against those who only aided and abetted the alleged wrongful acts.

SHEARN, J., dissented, with opinion.

APPEAL by the plaintiff, Chris Dalury, from a judgment of the Supreme Court in favor of certain of the defendants, entered in the office of the clerk of the county of New York on the 18th day of December, 1917, upon a dismissal of the complaint at the opening on a trial at Trial Term.

*Alex B. Greenberg* of counsel [*Greenberg & Levy,* attorneys], for the appellant.

*M. E. Kelley* of counsel [*Kelley & Connelly,* attorneys], for the respondent Booras.

*Anthony J. Ernest* of counsel [*Ireland & Kopff,* attorneys], for the respondent Garms.

PAGE, J.:

I cannot find in the facts of this case a cause of action for money damages. Dalury and Rezinas were copartners conducting a hotel and café at Coney Island. Before the formation of the partnership Rezinas had conducted the business, having a ground lease for a term of fifteen years. Upon this land he had erected the hotel and other buildings. The latter he rented to tenants for more than sufficient to pay the ground rent. Rezinas was indebted to Dalury and other persons, and the copartnership was formed, Dalury releasing Rezinas from obligations to himself, assuming certain other obligations, and contributing cash to the amount of $4,000 or thereabouts, Rezinas contributing the hotel business

and the lease of the premises. In a short time dissensions arose and Dalury physically withdrew from the business, being induced thereto by fear of violence from Rezinas. Negotiations for a settlement were pending from December to March, when Dalury commenced an action for a dissolution of the copartnership and an accounting. A receiver was appointed by stipulation of the attorneys naming a person to be appointed. There was an arrears of rent due and the landlord instituted proceedings to dispossess Rezinas and his subtenants. To this proceeding Dalury was made a party. On the return of the precept an attorney appeared for Dalury and offered to file an answer, whereupon the proceeding was discontinued as to him, and final order in favor of the landlord entered and a warrant duly issued and executed. The landlord thereafter leased the premises to the defendants Crickellas and Booras, dummies for Rezinas. The receiver, pursuant to an order of the court, sold the furnishings of the hotel at auction, Crickellas and Booras being the purchasers, for the sum of $350. The receiver thereafter accounted and was discharged. Dalury filed objections to the account and withdrew them. It is alleged and was stated by counsel that he would prove that all these proceedings were had as a result of a conspiracy on the part of all these defendants to oust Dalury from the partnership property and deprive him of his investment therein. It is not claimed that the default in rent arose by reason of this conspiracy, but that Rezinas was habitually in default, and that Rezinas had money with which he could have paid the rent. It was not stated that this money was funds of the copartnership. Apparently it is assumed either that the landlord having allowed Rezinas to be in arrears in the past, he was under some obligation to allow him to continue in arrears without resorting to dispossess proceedings, or that Rezinas was compelled to advance from his own individual funds money to pay rent due from the copartnership. I know of no such obligation resting upon either. The rent was in arrears and the landlord had the right to institute and prosecute proceedings to recover possession of his premises. The legal effect of this proceeding was to terminate the lease and vest the right of possession in the landlord. He then had the

legal right to let the premises to whomever he desired. There was, therefore, nothing wrongful or illegal in these acts. Likewise as to the sale of the partnership assets by the receiver. He had been appointed by the court on the consent of both parties in the action for dissolution of the copartnership; he was directed to sell by order of the court and in pursuance of said order sold. His accounts have been approved and he has been discharged. If there was any irregularity in the sale, or if the price realized was grossly inadequate, the court was open to Dalury to make his objections and seek redress. He, however, withdrew his objections. We must now accept the sale as a legal sale, legally made. These proceedings could only be impeached for fraud or irregularity in the conduct of the proceedings, and that in a direct attack and not collaterally. Therefore, both the dispossess proceeding and the sale were legal remedies legally pursued by those having a legal right thereto. Admitting, as we must, for every fact stated in the complaint and opening of counsel must be assumed to be true, that these acts were done as the result of an agreement among the defendants for the purpose of eliminating the plaintiff from the copartnership and depriving him of his interest in the property, or even that the acts were done maliciously, the plaintiff has no cause of action for damages. It is a well-settled rule of law that no action lies where a person has been damaged by another through the doing of a lawful act or in the enforcement of a legal remedy, no matter if the purpose and intent of the act were malicious. It is the act done that must be considered, and not the intent with which it was done. In fact this principle is so well settled that it has become crystallized into a maxim of the common law, *nullus videtur dolo facere qui suo jure utitur.* Nor does a lawful act become unlawful because two or more combine to do the act. A conspiracy is an agreement between two or more persons to do an unlawful act. If the act to be done be not unlawful, then the agreement or combination to do it is not a conspiracy, and injury caused thereby is not actionable, except a combination which assumes a public or *quasi* public aspect. It has long been the settled law in this State that the basis or gist of an action for conspiracy is the damage caused by the wrongful act of one or more persons,

and that the only materiality of the allegations with respect to the conspiracy or combination with those who are not the direct actors is to connect them with and make them responsible for the acts of others. (*Cohen* v. *Fisher & Co.*, 135 App. Div. 240; *Prospect Park & Coney Island R. R. Co.* v. *Morey*, 155 id. 347, 351; *Von Au* v. *Magenheimer*, 126 id. 257, 262; affd., 196 N. Y. 510, and cases cited.) Mr. Justice SHEARN recognizes this rule, but assumes to find in the breach of Rezinas' fiduciary obligation to his copartner an actionable wrong, which would sustain a recovery for damages at law against all who, in agreement and combination with Rezinas, ousted plaintiff from the business and enabled Rezinas to misappropriate to his own use plaintiff's investment.

The basis for this claim must of necessity be that the acts of Rezinas gave rise to a cause of action at law in the plaintiff against his copartner. But what was the plaintiff's investment in the copartnership? Certainly it cannot refer to the amount originally contributed. This action is not to recover an amount that the partner has been induced to put into the business in reliance upon fraudulent representation, but is to recover his interest in what remains after the capital has been employed in and subjected to the risks of the business and at most all he would be entitled to recover is the balance that would be found due upon an accounting in the action for dissolution. It is not alleged that such action had terminated nor that any balance had been struck and any amount found due. The partnership had not terminated and the action would be *ex delicto* for a conversion of the partnership assets. It is well settled that one partner cannot sue the other at law, as distinguished from an action in equity, with respect to partnership transactions, except after a full accounting, and balance struck, and such an action is on contract and not *ex delicto*. If one partner betrays his trust, and converts to his own use partnership property, he incurs the usual liability that one partner incurs to another respecting partnership affairs, *i. e.*, to be held liable in an accounting, but he cannot be sued by the other partner for damages in an action for conversion. (*Belanger* v. *Dana*, 52 Hun, 39, 42; *Hollister* v. *Simonson*, 36 App. Div. 63; 170 N. Y. 357; *Covert* v. *Henneberger*, 53 How. Pr. 1; *Cary* v.

*Williams*, 8 N. Y. Super. Ct. 667.) The fact that the partner may have conspired with others with intent to acquire the interest of the copartner, so long as the proceedings were lawful and in the assertion of a legal right, gives no cause of action at law. (Contrast opinion in *Weinstein* v. *Welden*, 80 Misc. Rep. 348, with opinion of reversal in 160 App. Div. 554; latter affd., 220 N. Y. 693. See, also, *Neudecker* v. *Kohlberg*, 81 N. Y. 296, 299.) As the plaintiff could not recover judgment against Rezinas in this action, he has no cause of action herein against any of the defendants.

Mr. Justice SHEARN finds some justification for the action on a theory of fraud in the sale by the receiver, being a fraud upon the court, and that, therefore, the injured party is not required to resort to the accounting of the receiver and have the order opened and set aside but may recover his damage directly in an action. (Citing *Verplanck* v. *Van Buren*, 76 N. Y. 247, and *Swan* v. *Saddlemire*, 8 Wend. 676.) In both of those cases the judgments were obtained, not by a party pursuing a legal remedy in enforcement of a legal right, but in enforcing a fictitious claim by means of false books of accounts and contracts, which of course was a fraudulent use of legal proceedings to enforce a non-existent right. In the case at bar the sole allegation of fraud in the sale was that the property was struck down to dummies of Rezinas and at an inadequate price, pursuant to a conspiracy. If such a state of facts existed the fraud was not upon the court, nor in the prosecution of the remedy, and could only be relieved against upon the accounting of the receiver or if the party was ignorant of the fact in an action in equity to set aside the sale and for a resale of the property.

If the plaintiff has been injured it is not necessary to reverse the settled law of this State and give him relief in this action. The courts have been open to him and he could have secured his rights by appropriate action on his part. The action for a dissolution of the copartnership brought by him as plaintiff was pending. Rezinas could have been called to account in that action for any breach of duty to his copartner that had deprived him of his interest in the copartnership assets. Next it is claimed that the plaintiff was made a party to this dispossess proceeding, and when his lawyer appeared

and proposed to file an answer the proceeding was discontinued as to him. He was not a necessary party. The discontinuance of the action as to him did not deprive him of his right to file an answer (Code Civ. Proc. § 2244), or having notice he could himself have paid the rent, or as he claimed by virtue of an assignment of the lease to the copartnership he could have redeemed the premises within one year. (Code Civ. Proc. § 2256.) Also in the matter of the sale by the referee, if there was anything done in derogation of his rights, he had full opportunity to present his objections to the referee's accounts and obtain a judicial determination of his rights.

In my opinion the learned trial justice properly dismissed the action and the judgment should be affirmed.

CLARKE, P. J., concurred; SHEARN, J., dissented.

SMITH, J. (concurring):

For any wrongful act of the partner Rezinas plaintiff must recover on an accounting. For any wrongful act of the receiver, plaintiff's remedy is upon the accounting of the receiver. With the accounting of the partner Rezinas closed and with the accounting of the receiver closed after plaintiff's objections thereto were withdrawn, plaintiff is left without remedy against those who only aided and abetted the claimed wrongful acts.

I think the judgment should be affirmed.

SHEARN, J. (dissenting):

The complaint in this case was dismissed on the opening statement of plaintiff's counsel. The action is one to recover damages for fraud, consisting of the combined acts of the defendants, pursuant to an alleged unlawful agreement and conspiracy, to enable the defendant Rezinas to defraud plaintiff out of his investment of $15,000 for an undivided half interest in the partnership business of plaintiff and said Rezinas, who conducted a hotel and café at Coney Island called the Indiana House. He had a fifteen-year ground lease from the defendant Garms and had erected thereon the hotel and several other buildings at an expense of between $25,000 and $30,000. In 1912 the lease had eleven years to run.

The lease was a valuable one, for while the rental was $8,500 Rezinas collected from various sub-tenants $8,700 a year rent for premises and privileges other than the hotel. This gave him the Indiana House free of rent.

On August 2, 1912, plaintiff and Rezinas entered into written articles of copartnership, to continue for the term of twelve years. Rezinas contributed the lease, buildings, fixtures, furnishings and stock in trade, and plaintiff contributed $15,000, $4,000 of which was in cash and the balance paid by the assumption of various liabilities. Shortly after entering upon the partnership, disputes arose between the partners, resulting in threats of violence to the plaintiff made by Rezinas, rendering it dangerous for plaintiff to return to the hotel after November 12, 1912. Thereafter an amicable settlement was agreed upon and Rezinas agreed and was willing to return to plaintiff his cash investment of $4,000, and in addition thereto to pay him $1,800, $800 of which was to be in notes. The settlement would have been consummated but for the intervention of one of the defendants, a lawyer for Rezinas, who persuaded the latter not to pay plaintiff anything, stating that he would " turn a trick whereby Dalury will not get a cent " and promising to " do Dalury up." Failing to obtain the return of his investment, plaintiff on March 21, 1913, began suit against Rezinas in the Supreme Court for a dissolution of the partnership and an accounting. Rezinas appeared by the lawyer who had undertaken to provide a way to cheat the plaintiff out of his investment. On April 19, 1913, a receiver was appointed in that action and qualified as such. He is one of the defendants. The receiver retained the lawyer of Rezinas as his attorney. Thereupon the lawyer of Rezinas formulated his scheme for cheating the plaintiff out of his investment, and the various defendants became parties to the scheme and each took the requisite steps to effectuate the fraud. The scheme was a very simple one. Rezinas was somewhat behind in his rent. This was usual with him and had been permitted by the landlord. It was agreed that Rezinas should refrain from paying the rent, that Garms should dispossess Rezinas and thus break the lease, but under an agreement whereby the lease should be in effect continued by a new lease to dummies of Rezinas,

and that dummies should buy in for a trifle at a receiver's sale the fixtures and furnishings and stock in trade, and that then the business should go on as before, with the exception that the plaintiff would be ousted and would have lost all of his interest in the business. After the arranged dispossess proceeding the landlord was to be paid his arrears of rent. The scheme was carried out to the letter and accomplished its purpose. This action resulted, to recover damages for such fraudulent conspiracy.

All of this was set forth in the opening with a wealth of careful recital of all the facts, whereupon the trial justice of his own motion expressed a doubt as to whether there could be a recovery upon such a state of facts, which led to the motion to dismiss on the opening. Two considerations moved the court to take this position. One was that the lease was broken by dispossess proceedings which were regularly brought and which the defendant Garms had a legal right to carry through to judgment. The other was that the receiver had filed an account of his proceedings and of the amount realized on the sale, and that no steps were taken by the plaintiff to surcharge his account. The court was of the opinion that plaintiff could only succeed in this action by a collateral attack upon the dispossess judgment and the approved account of the receiver, and stated that he would not permit such an attack to be made.

Of course, plaintiff's claims may be extravagant, impossible of proof and contrary to the truth, but, assuming as we must that all of the allegations in his complaint and in the opening of his counsel are true, the question is whether the plaintiff can recover damages for being thus ousted from the business and losing his investment, which Rezinas was willing and had agreed to repay and would have repaid but for the fraudulent scheme devised by his lawyer, to which the other defendants became parties.

The defendants chiefly rely upon the rule prevailing in this State, that no action for a conspiracy lies where two or more persons conspire to do a lawful act in a lawful manner and cause damage thereby, even though they have acted with a malicious motive. (*Cohen* v. *Fisher & Co.*, 135 App. Div. 238; *Prospect Park & Coney Island R. R.*

*Co.* v. *Morey*, 155 id. 347, 351; *Von Au* v. *Magenheimer*, 126 id. 257; affd., 196 N. Y. 510.) They argue that the defendant Garms was legally entitled to bring dispossess proceedings because the rent was unpaid, and there being no fraud in the judgment it matters not that the purpose or result was to break the lease, or that the proceedings were brought as a result of an agreement or combination styled a " conspiracy." This is quite true, but it does not take into account the *gravamen* of the cause of action. The wrong complained of is not the dispossess proceeding. That was merely one of the steps by which the wrong was perpetrated. The wrong was the virtual theft and the conversion of plaintiff's money by his partner Rezinas, who, unmindful of his fiduciary obligations as a partner, and in violation of his partnership agreement, aided by the combined acts of the defendants who were willing and active parties to a disclosed fraud, ousted plaintiff from the business and misappropriated to his own use plaintiff's investment. This breach of faith and misappropriation on the part of Rezinas was a tort, and was actionable. (*Goldsmith* v. *Loeb*, 182 App. Div. 533.) This was the very thing which the defendants confederated to bring about and which they accomplished. Surely it can be no answer to say that one of the important steps in the course of the conspiracy was an authorized legal proceeding.

If a trustee, holding a mortgage and planning to get the property into his own hands, arranged for a foreclosure and having a dummy buy in the property and thereafter transfer it to him, it would be no answer to a charge of conspiracy to defraud his *cestui que trust* to say that his title was acquired in a valid legal proceeding. The wrong would not consist in the foreclosure proceeding but in the breach of trust. Here the original wrong consisted in the breach by Rezinas of his fiduciary obligation to his partner and in his agreement with his lawyer to cheat the plaintiff out of his property by causing the dispossess proceeding to be brought under an agreement that, notwithstanding, Rezinas through dummies should continue in possession and have the use of plaintiff's investment.

The fraud was planned and agreed upon while the partner-

First Department, June, 1918. [Vol. 183.

ship still existed and, therefore, at a time when a fiduciary relation, with its consequent obligation of good faith, still existed. This clearly appears from the fact that the tentative agreement to effect an amicable dissolution, which was broken up by the plan outlined by Rezinas's lawyer to "turn a trick" and "do Dalury up," was reached in December, 1912, whereas no legal action was taken to dissolve the partnership until March 21, 1913. In *Weinstein* v. *Welden* (160 App. Div. 554; affd., 220 N. Y. 693) an essentially different situation existed, for there the partnership was terminable at will, whereas in the case at bar the partnership had twelve years to run. In *Neudecker* v. *Kohlberg* (81 N. Y. 296) the alleged breach of faith consisted of a confession of judgment given by plaintiff's partner to codefendants, enforced on execution, upon a valid debt which, as plaintiff sought to show, had not matured. The court said: "To show that a debt is not due presently is simply showing that the time has not arrived for its payment; it has no tendency to show that the debt does not in fact exist (*Leggett* v. *Bank of Sing Sing,* 24 N. Y. 283). It was a debt when contracted, and the liability of the debtor was then fixed. It was evidently against this state or condition of things that the pleader made the allegation that Kohlberg was not indebted to his co-defendants. In substance, he meant to say the judgment represents a fictitious debt, and this appears not only from the language used, but from the context." Accordingly, the judgment, by which the plaintiff recovered damages for an alleged conspiracy to break up the partnership, was reversed, for it was not "*secundum allegata et probata.*" Furthermore, that situation is far removed from one where, in order to squeeze one partner out of a business and appropriate his investment, the other partner promotes and procures a collusive suit to be brought to break the partnership's lease, when the suit, as we must assume from the complaint and the opening of counsel, was otherwise unnecessary and would not have been brought unless instigated in bad faith and for the express purpose of defrauding the copartner.

To uphold this cause of action, there is not involved, in my opinion, any departure from the rule that one partner may not sue another for conversion of the property belonging

to the partnership. This action is not one to recover damages for the conversion of the lease or of any other property of the firm. Plaintiff's interest in the business, represented by his capital investment, was his own property. It was that interest in the business which was rendered valueless by the breach of faith complained of and for which damages are sought.

The plaintiff is making no attack upon the validity of the dispossess proceeding. There is none that he could make for the rent was past due and unpaid. Plaintiff does not attempt to regain possession of the leased property or challenge any of the rights of the landlord. He recognizes his ouster as accomplished and seeks damages, not for being dispossessed by the landlord, but for his partner's breach of faith and tort, instigated by one of the defendants, the lawyer of Rezinas and aided and abetted by the others with knowledge of the fraud and for the purpose of consummating it.

Neither is the plaintiff, so far as concerns the defendant receiver, who, it is alleged, made a fictitious sale of the fixtures and stock in trade, relegated to an attempt to surcharge his accounts or bound by the fact that the receiver's accounts were approved by the court. The sale, upon the assumed facts, was a fraud upon the court. Where there is actual fraud in a judgment, resulting from a conspiracy, the injured party is not required to set aside the judgment, but may recover his damages. (*Verplanck* v. *Van Buren*, 76 N. Y. 247; *Swan* v. *Saddlemire*, 8 Wend. 676.)

If the plaintiff were seeking to recover his share of the true value of the property disposed of at the alleged collusive receiver's sale, of course he could only do so either by opening the receiver's accounts or by action to set aside the sale. But, again, it should be emphasized that this action is not one brought to recover partnership property or its value. It is brought to recover damages for the destruction of plaintiff's interest in a going business, brought about by his partner's breach of faith and consummated by the acts of the other defendants who were, knowingly and with fraudulent purpose, in collusion with the defaulting partner confederating and acting for a common end. There are many instances where, following the rule applied in *Gould* v. *Cayuga County*

*National Bank* (99 N. Y. 333), a party defrauded has been permitted to affirm and stand upon the transactions constituting a fraud and recover damages for the fraud instead of being compelled first to set aside the transactions.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Judgment affirmed, with costs.